IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.

SCHLUMBERGER TECHNOLOGY CORP.
and GENERAL DYNAMICS ORDNANCE
AND TACTICAL SYSTEMS, INC.,

        Defendants.

Case No. 11-cv-399-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the plaintiff United States of America's ("USA")

unopposed motion to enter consent decree (Doc. 119).  For the following reasons, the Court

grants the motion.

1.  Background

This action was brought by the USA on behalf of the Administrator of the United States

Environmental Protection Agency ("EPA") and the Secretary of the Department of the Interior

("DOI") pursuant to Section 107 of the Comprehensive Environmental Response, Compensation,

and Liability Act of 1980, 42 U.S.C. § 9607 ("CERCLA").  The USA seeks reimbursement for

cleanup costs and future costs associated with the release of hazardous substances at Site 36 of

the Miscellaneous Areas Operable Unit ("MISCA OU") at Crab Orchard National Wildlife

Refuge ("Refuge") National Priorities List Site ("Site 36").

In 1947, Congress established the Refuge, encompassing over 40,000 acres primarily in

Williamson County, Illinois.  Site 36 of MISCA OU encompasses approximately 47 acres, and is

the location of the former waste water treatment plant ("WWTP") that operated from the 1940s

until 2005.  Various industrial tenants discharged waste through the sewer system to the WWTP

for treatment.  Those wastes contained polychlorinated biphenyls ("PCBs"), cadmium,

chromium, and other contaminants.

Remedial action necessary to clean up the aforementioned toxins at Site 36 commenced

in 2005 and was completed in 2006; however, ongoing groundwater monitoring is necessary.  In

the course of the cleanup, DOI incurred $8,758,027 in costs and expects to incur $406,174 in

future costs for groundwater monitoring.  The EPA has incurred $625,243 in costs.

In its complaint the USA identified General Dynamics – Ordnance and Tactical Systems,

Inc. ("GD-OTS") and Schlumberger Technology Corporation ("Schlumberger") (collectively

"Defendants") as responsible parties.  The Defendants asserted counterclaims against the United

States.  Defendants also filed a Third Party Complaint against Crane Co., Illinois Tool Works

Inc., Olin Corporation, The Sherwin-Williams Company, Mallinckrodt US LLC, Great Lakes

Synergy Corporation, and Pennzoil-Quaker State Company (collectively "Third-Party

Defendants").  The Sherwin-Williams Company further made an indemnification claim against

the USA.

Through a lengthy negotiation process, the parties came to the agreement currently under

consideration.  On January 6, 2014, the USA filed its notice of proposed settlement, attaching the

proposed consent decree as an exhibit.  Doc. 112.  Notice of lodging of the proposed consent

decree was published in the Federal Register on January 13, 2014 (79 Fed. Reg. 2,200).  The

public comment period expired and the USA reported that it received no comments on the

proposed consent decree.  The Court has received no response to the USA's motion to enter the

consent decree and will consider approval of the consent decree.

2.  Analysis

Approval of a consent decree is committed to the discretion of the district court.  *Madison*

*Cnty. Jail Inmates v. Thompson*, 773 F.2d 834, 845 (7th Cir. 1985).  In reviewing a consent

decree, the district court pays deference to the expertise of the agency and the policy encouraging settlement. *United States v. George A. Whiting Paper Co.*, 644 F.3d 368, 372 (7th Cir. 2011). As such, a presumption in favor of approving the consent decree arises. *Donovan v. Robbins*, 752 F.2d 1170, 1177 (7th Cir. 1985). Accordingly, this Court "must approve a consent decree if it is reasonable, consistent with CERCLA's goals, and substantively and procedurally fair." *George A. Whiting Paper Co.*, 644 F.3d at 372.

        a.   Procedural Fairness

A consent decree is procedurally fair if the negotiations in reaching it were open and at arms-length. *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3d Cir. 2003); *see also United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 86 (1st Cir. 1990) (a court determines procedural fairness by examining "the candor, openness, and bargaining balance ").

The Court finds that the instant consent decree was the result of a procedurally fair process. The parties engaged in a two-day mediation session with a neutral third party and all parties were represented by experienced counsel. The third-party defendants were included in settlement negotiations and also represented by experienced counsel. Attorneys and officials from several federal agencies reviewed and approved the proposed consent decree. As such, the consent decree was reached through a procedurally fair negotiation process.

        b.   Substantive Fairness

A consent decree is substantively fair if it involves "corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." *Cannons*, 899 F.2d at 87. Procedural fairness is relevant to the inquiry because "[t]o the extent that the process was fair and full of adversarial vigor, the results come before the court with a much greater assurance of substantive fairness." *Id*. at 87, n.4.

The Court finds the instant consent decree substantively fair because the parties share responsibility for the cleanup at Site 36 and the payments of the various parties reflect varying levels of fault.  Specifically, the consent provides that the defendants would contribute approximately $4.1 million representing past and future costs to reimburse the EPA and DOI's expenses.  The United States, on behalf of the federal agencies, would reimburse approximately $5.6 million.  These reimbursements would represent approximately 95% of the EPA and DOI's unreimbursed cleanup costs.  Further, this settlement was reached after more than a year of litigation and settlement negotiations among the parties.  The Court has no reason to believe the process was substantively unfair.

c.  Reasonableness

Considering a consent decree's reasonableness is a "multifaceted exercise."  *Id*. at 89. Reasonableness factors include: (1) "the decree's likely efficaciousness as a vehicle for cleansing the environment"; (2) "whether the settlement satisfactorily compensates the public for the actual (and anticipated) costs of remedial and response measures"; and (3) "the relative strength of the parties' litigating positions."  *Id*. at 89-90.

This Court finds the consent decree to be reasonable.  The reasons this Court finds the consent decree substantively fair also support the reasonableness of the agreement.  It will not only reimburse the EPA and DOI for cleanups already performed, but it will also provide for ongoing costs associated with groundwater monitoring.  The settlement is apportioned according to the players' roles.  Nothing indicates this consent decree is unreasonable.

d.  Consistency with CERCLA

CERCLA includes two major policy concerns.

First, Congress intended that the federal government be immediately given the tools necessary for a prompt and effective response to the problems of national magnitude resulting from hazardous waste disposal.  Second, Congress intended

4

that those responsible for problems cause by the disposal of chemical poisons bear
the costs and responsibility for remedying the harmful conditions they created.

*Id*. at 89-90 (quoting *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081

(1st Cir. 1986)).

Here, the first goal is satisfied because the consent decree provides for reimbursement of

cleanup expenses plus future expenses incurred for groundwater monitoring.  The second goal is

also met.  The parties are reimbursing costs and providing for future monitoring in accord with

their various roles.  The agreement further avoids expensive litigation.  Accordingly, the consent

decree is consistent with CERCLA's goals.

3.  Conclusions

For the foregoing reasons, the Court **GRANTS** the USA's unopposed motion to enter

consent decree (Doc. 119).  The Court **DIRECTS** the Clerk of Court to enter the proposed

consent decree.  Because the consent decree resolves all pending claims between the parties,

once the consent decree is entered, this case should be closed.

**IT IS SO ORDERED.**

**DATED:**  April 1, 2014

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
